UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re | ) Chapter 11, No. 21- |
| THE FREDERICK, LLC | ) |
| Debtor | ) |

# DECLARATION OF SCOTT M. SHORTT IN SUPPORT OF CHAPTER 11 PETITION AND FIRST DAY MOTIONS

I, SCOTT M. SHORTT, being duly sworn, make this Declaration under the pains and penalties of perjury:

1. I am, and have been since 2010, the manager and majority member of The Frederick, LLC (hereinafter the "Debtor" or "The Frederick"). I am familiar with the Debtor's day-to-day operations, business, and financial affairs.

2. I submit this Declaration in support of the Debtor's Chapter 11 Petition and the Motions and Applications filed by the Debtor on the Petition Date.

3. Except as otherwise indicated, all statements set forth in this Declaration are based upon (i) my personal knowledge, (ii) information supplied to me by other members of the Debtor's professionals, (iii) my review of relevant documents, or (iv) my opinion based upon my experience and knowledge of the Debtor's operations and financial affairs. If called to testify, I would testify to the facts set forth herein. I am authorized by the Debtor to submit this Declaration.

4. Part I of this Declaration describes the Debtor's business and circumstances related to the filing of this Chapter 11 case. Part II sets forth the relevant facts in support of individual Motions and Applications.

## I.  BACKGROUND

5. The Debtor owns and operates the Kemble Inn, a nine-guestroom mansion built in the 1880's, and Table Six, a fine dining restaurant and bar, located in Lenox, Massachusetts. Since purchasing the estate in 2010, the Debtor has invested not less than $2 million dollars to renovate and expand the boutique hotel; in 2019, it was named one of the Best Inns in the Berkshires by New England Magazine.

6. As the manager and 80% majority owner of The Frederick, I manage all aspects of the business's operations. I have the overall responsibility for creating, planning, implementing, and integrating the strategic direction of the business. I am the central point of contact for communication with all employees, guests, and vendors. I am currently receiving compensation of $75,000 per year.

7. Hussein Jalloul owns 20% of the membership interest in the Debtor. He does not receive any regular compensation.

8. The Debtor primarily derives revenues from its inn operations. Historically, the Debtor also received income from operating its restaurant. Prior to the Covid-19 pandemic, the restaurant had seating capacity for 75 people. Generally, the Debtor's strongest financial months, in terms of revenue, are from the end of May to early October.

9. The Debtor's books and records indicate that in 2019, the Debtor had gross revenue of $921,384 and realized an operating loss of $104,623, and, in 2020, the Debtor had gross revenue of approximately $127,173 and realized an operating loss of approximately $245,072. As of June 28, 2021, the Debtor's gross revenue was approximately $129,268.08 and it is currently showing net ordinary income of $24,444.52 year-to-date.

10. The Debtor's tax returns, prepared on a cash basis, indicate that, as of December 31, 2019, the Debtor's assets had a value of approximately $2,357,034.

11. I have caused, contemporaneously herewith, the Debtor to file a copy of its 2019 federal income tax return, which includes what I believe is an accurate balance sheet as of December 31, 2019. The Debtor's assets primarily consist of real estate and cash.

12. Since the Debtor purchased the property in 2010, it has invested more than $2.5 million to improve, renovate, and expand the property.

13. In 2020, following its closure due to the Covid-19 pandemic, the Debtor defaulted on its secured debt owed to Adams Community Bank ("ACB") and ACB called its loans. On or about April 13, 2021, ACB assigned its loans with the Debtor to MA Opportunity Investments, LLC ("MAOI"). MAOI scheduled a foreclosure auction sale of the Debtor's assets on June 30, 2021.

14. The Frederick intends during its Chapter 11 case to negotiate a consensual resolution to its financial issues that it intends to embody in a Chapter 11 Plan of Reorganization. The Debtor currently anticipates that a component of its plan of reorganization will be the sale of its assets as a going concern.

## II.     FACTS IN SUPPORT OF FIRST DAY MOTIONS[1]

15. The Debtor represents that each of the following motions and applications are critical to its reorganization strategy.

A.     Motion for Interim and Final Use of Cash Collateral ("Cash Collateral Motion").

16. By the Cash Collateral Motion, the Debtor seeks the entry of an Order on an interim basis authorizing the Debtor to use cash collateral for the operation of the Debtor's business in accordance with the budget attached to the Cash Collateral Motion as Exhibit "A" (the "Budget"). The Debtor also requests entry of an Order granting MAOI, American Express, and the U.S. Small Business Administration post-petition replacement liens.

---

[1] Capitalized terms not defined herein shall have the same meaning ascribed to such terms in the respective First Day Motions.

17. The Debtor is indebted to MAOI in the approximate amount of $2,600,000 on account of two loans (collectively the "Bank Loans"). As security for the Bank Loans, the Debtor granted a first-priority mortgage on the Debtor's real estate and a first-priority security interest in its personal property.

18. The Debtor is intended to American Express in the approximate amount of $91,348.10 on account of one loan (the "AmEx Loan"). As security for the AmEx Loan, the Debtor granted a second-priority security interest in its personal property.

19. The Debtor is indebted to the SBA in the approximate amount of $427,600.00 on account of one loan (the "SBA Loan"). As security for the SBA Loan, the Debtor granted SPHS a third-priority security interest in its personal property.

20. The value of the Debtor's real estate, including the fixtures and furniture related thereto, is approximately $3,200,000.

21. The value of the Debtor's other assets primarily consist of $116,480 in cash.

22. I believe that the Budget represents reasonable projections for the Debtor's operation during the period for which the usage is requested.

23. In its Cash Collateral Motion, the Debtor requests a hearing on the use of cash collateral on an emergency basis to avoid immediate and irreparable harm to employees, guests, and the Debtor's Bankruptcy Estate.

24. The Debtor requires the immediate use of cash collateral to fund operational and administrative expenses. The ability of the Debtor to maintain relationships with its vendors, suppliers, and employees, and pay its day-to-day expenses, is essential to the Debtor's continued viability.

25. Terminating the Debtor's business operations would have devastating effects on the Debtor's going concern value. Absent the use of cash collateral, the Debtor will be forced to

4

cease operations. If the Debtor closed, approximately 5 jobs would be eliminated and the Debtor's guests' plans would be immediately disrupted. Use of cash collateral is, therefore, critical to preserve and maintain the Debtor's Bankruptcy Estate and to attempt a successful reorganization in this Chapter 11 case.

26. I believe that the continued operation of the Debtor is in the best interests of the estate in that it will result in the payment of its creditors and that the proposed Budget will enable the company to do so in a timely manner.

B. <u>Application to Employ Fitzgerald Attorneys at Law, P.C. as Counsel to the Debtor ("Application to Employ Counsel")</u>.

27. Pursuant to the Application to Employ Counsel, the Debtor seeks to employ Fitzgerald Attorneys at Law, P.C. as its counsel in these proceedings due to the firm's extensive experience and knowledge in the area of business reorganization under Chapter 11 of the United States Bankruptcy Code and its ability to respond effectively to legal issues that may arise in connection with this case. Fitzgerald Attorneys at Law, P.C. is well-qualified to represent the Debtor in this case in an efficient manner.

28. In its pre-petition preparation for this Chapter 11 case, Fitzgerald Attorneys at Law, P.C. developed an understanding of the Debtor's business, the factors giving rise to its need to reorganize, the multiple issues unique to the Debtor's business affairs, and many of the legal issues that may arise in this Chapter 11 case.

29. For these reasons, I believe that Fitzgerald Attorneys at Law, P.C. is both well-qualified and uniquely suited to represent the Debtor in this Chapter 11 case.

I declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: June 28, 2021

_____
Scott M. Shortt
Manager